STATE OF NORTH CAROLINA v. HENRY WATSON

No. 359A91

(Filed 3 November 1994)

1. **Homicide § 257 (NCI4th)— first-degree murder—premeditation and deliberation—quarrel with victim**

The trial court did not err in a noncapital first-degree murder prosecution by denying defendant's motion to dismiss for lack of evidence showing premeditation and deliberation where defendant argued that all of the evidence showed that his intent to kill the victim was formed under the influence of the provocation of the quarrel with the victim. However, there was evidence tending to show preparedness on the part of defendant to kill the victim before the argument between them ensued in that defendant procured a gun and placed it by his side in the truck where he was seated before the argument and evidence that after the argument had ended and the victim had withdrawn there was time for defendant's blood to have cooled before the shooting occurred. Defendant's mere anger at the victim is not alone sufficient to negate deliberation. Moreover, there was other evidence sufficient to support the jury's finding of both deliberation and premeditation.

**Am Jur 2d, Homicide §§ 437 et seq.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**2. Homicide § 384 (NCI4th)— first-degree murder—self-defense—fear of death or great bodily harm**

The trial court did not err in a noncapital first-degree murder prosecution by denying defendant's motion to dismiss on the ground that the State failed to prove that defendant did not act in self-defense where there was evidence from which the jury could find beyond a reasonable doubt that defendant's belief in the need to kill was unreasonable.

**Am Jur 2d, Homicide § 448.**

**Homicide: modern status of rules as to burden and quantum of proof to show self-defense. 43 ALR3d 221.**

**Standard for determination of reasonableness of criminal defendant's belief, for purposes of self-defense claim, that physical force is necessary—modern cases. 73 ALR4th 993.**

**3. Homicide § 615 (NCI4th)— first-degree murder—self-defense—instructions—honest but unreasonable belief in need to kill**

There was no plain error in a noncapital first-degree murder prosecution in which self-defense was an issue where the trial court charged the jury in terms of defendant's belief in a need to kill, rather than in terms of his belief in a need to use deadly force. Although defendant argued that an honest but unreasonable belief in the need to kill is tantamount to the use of excessive force and should result in a verdict of voluntary manslaughter on the theory of imperfect self-defense, and although as a general proposition instructing a jury in terms of the need "to use deadly force" rather than "to kill" could be appropriate if the evidence supported such an instruction, the evidence in this case showed an intent to kill rather than an intent to use deadly force.

**Am Jur 2d, Homicide §§ 519 et seq.**

**4. Homicide § 493 (NCI4th)— first-degree murder—instructions—premeditation and deliberation—lack of provocation**

There was no plain error in a noncapital prosecution for first-degree murder by instructing the jury that premeditation and deliberation could be inferred from certain circumstances, including the victim's lack of provocation. Although defendant

argued that there was no evidence showing a lack of provocation by the victim, there was some evidence to show that defendant acted independently of any provocation, which is the legal equivalent of acting in the absence of provocation. Moreover, the pattern jury instruction which the court gave could not have been misunderstood to mean that the State had proven the circumstances mentioned.

**Am Jur 2d, Homicide § 501.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

5. **Evidence and Witnesses §§ 1070, 1066 (NCI4th)— flight— instructions—evidence sufficient—not an expression of opinion**

The trial court did not err in a noncapital first-degree murder prosecution by instructing the jury on flight as evidence of guilt where there was evidence that defendant immediately sped away in his truck after shooting the victim five times and, although aware that police officers had visited his house in search of him, did not contact the police or return home for two weeks following the shooting. The court appropriately instructed the jury that it was to determine the weight to be given the evidence and that it was the contention of the State rather than the court that defendant had fled. Defendant did not request that another explanation for defendant's unavailability be suggested in the court's instructions.

**Am Jur 2d, Evidence §§ 532 et seq.**

6. **Homicide § 635 (NCI4th)— first-degree murder—self-defense—duty to retreat**

The trial court did not err in a noncapital first-degree murder prosecution by failing to instruct *ex mero motu* that a person who is without fault and who reasonably believes that an attack is being made with felonious intent has no duty to retreat where the evidence was that the victim quit the argument and returned to his vehicle, defendant left his vehicle, walked to the victim's car and began shooting, and the evidence revealed no attack or attempted attack by the victim.

**Am Jur 2d, Homicide § 520.**

STATE v. WATSON

[338 N.C. 168 (1994)]

**Homicide: extent of premises which may be defended without retreat under right of self-defense. 52 ALR2d 1458.**

**7. Evidence and Witnesses § 284 (NCI4th)— first-degree murder—self-defense—cross-examination—character of victim**

The trial court did not err in a noncapital first-degree murder prosecution by sustaining the State's objection to cross-examination of a prosecution witness concerning the character of the deceased where there was no showing that defendant had knowledge of the witness's opinion of the victim's dangerousness and, although it was error not to permit the jury to hear evidence regarding the victim's violent character because the jury was instructed on self-defense and was required to determine the aggressor, the error was harmless because the trial court gave defendant wide latitude in cross-examining the witness and defendant was able to elicit extensive testimony concerning the victim's reputation for violence. Moreover, there was no offer of proof and the significance of the evidence sought to be elicited could not be assessed.

**Am Jur 2d, Evidence §§ 363 et seq.**

**8. Evidence and Witnesses § 2170 (NCI4th)— first-degree murder—gunshot residue analysis—basis for expert opinion**

There was no error in a noncapital first-degree murder prosecution where defendant contended that an SBI agent's expert testimony on gunshot residue analysis amounted to an opinion based on an assumed fact unsupported by evidence, but his opinion was that his findings were consistent with the victim raising his hand in response to the attack and was not based on any assumed fact. N.C.G.S. § 8C-1, Rule 702.

**Am Jur 2d, Witnesses § 427.**

**9. Constitutional Law § 342 (NCI4th)— first-degree murder—jury question—ex parte communication**

There was no error in a noncapital first-degree murder prosecution where the jury knocked on the door and indicated that they had a question, the judge instructed the bailiff to give them a yellow pad, stand at the door, and tell them to write out the question, the question had not been produced within fifteen minutes, and the judge sent the defendant to lock-up and worked on

STATE v. WATSON

[338 N.C. 168 (1994)]

other matters. Although defendant contended that this was an unconstitutional *ex parte* communication, the bailiff was instructed only to retrieve a question from the jury and bring it to the court. No objection was raised by defendant and, nothing else appearing, it may be assumed that the bailiff followed the court's instructions. Moreover, as to the court's failure to determine whether the jury had a question, the jurors were free to inform the court that their question remained unanswered and the defendant was free to object and request that the court confirm that the jury no longer had a question.

**Am Jur 2d, Criminal Law §§ 695, 696, 910 et seq.**

**Communication between court officials or attendants and jurors in criminal trial as ground for mistrial or reversal—post-Parker cases. 35 ALR4th 890.**

**Postretirement out-of-court communications between jurors and trial judge as grounds for new trial or reversal in criminal case. 43 ALR4th 410.**

Appeal of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Read, J., at the 10 September 1990 Criminal Session of Superior Court, Wake County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court on 15 January 1993.

*Michael F. Easley, Attorney General, by G. Lawrence Reeves, Jr., Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

EXUM, Chief Justice.

Defendant Henry Watson was tried noncapitally for first-degree murder of Ronald Bilbrey on the theory of premeditation and deliberation. He was found guilty and sentenced to life imprisonment. Defendant now brings forth eight assignments of error. We conclude defendant's trial was free from prejudicial error.

I.

The State's evidence tended to show the following: Around 9:00 p.m. on 16 June 1989 Lisa Marlene Harrell was watching television with her husband in their mobile home at Countryside Trailer Park in

Raleigh when she heard a loud argument outside. Looking through the window of her mobile home, she observed a truck and a car resembling a station wagon facing each other. Harrell then returned to her chair and continued watching television.

The argument continued for about thirty minutes before Harrell heard a gunshot, which, after a brief pause, was followed by three additional consecutive shots. Upon hearing the shots, Harrell stepped outside onto her porch and witnessed a blue and white Ford pickup truck driving past her mobile home and leaving the mobile home park at a high rate of speed. Directing her attention toward the area where the car and truck had been parked, Harrell heard someone crying for help. She walked toward the station wagon and observed a woman, Sherry Ann Green, kneeling on the seat, screaming "Ron," and "Help me," and a man, Ronald Bilbrey, in the driver's seat slumped over toward the passenger side. Green was Bilbrey's girlfriend at the time of the shooting. The two had been living together with Ira Diggs, Green's fourteen year-old son, in a mobile home in the same mobile home park. Harrell checked Bilbrey's pulse and found he had none. Harrell recognized the smell of alcohol within the station wagon, but she saw no evidence of any weapon in the vehicle or on either Bilbrey or Green.

Earlier on the same date, Diggs, defendant's nephew, saw defendant leaving Green's mobile home. Defendant had come to inquire about ten dollars that Bilbrey owed him. At that time, Green, defendant and Bilbrey were all intoxicated. Bilbrey paid defendant the money and ordered defendant to leave. After telling Green that he was tired of defendant being around Green's mobile home, Bilbrey left the mobile home, saying that he was going to talk to defendant and get it straight.

When Diggs entered the mobile home, Green told him that she, defendant and Bilbrey had argued and she was afraid to spend the night in the mobile home because she felt some problem might arise between Bilbrey and her. Green requested Diggs to find defendant and ask whether she and Diggs could stay at defendant's house.

Diggs stopped defendant as he was leaving the mobile home park and asked whether he and Green could stay with defendant that night. While Diggs and defendant were talking, Bilbrey drove up in his car and stopped within five feet of defendant's truck. At the same time, defendant removed a .22-caliber revolver from a bag and placed it next to his leg.

Bilbrey began to argue with defendant. During the argument, Bilbrey instructed Diggs to find Green. When Diggs returned with Green, the two men were still arguing. Bilbrey, who appeared intoxicated, was standing next to the door of defendant's truck, and defendant was seated in his vehicle. When Bilbrey accused defendant of making advances towards Green, defendant told Bilbrey he did not want to discuss the matter in public. He then told Bilbrey "he was acting like an ass." Bilbrey responded, "I'll show you how an ass acts," and then jumped into his own car and leaned over as if to insert the keys in the ignition. At that moment defendant got out of his truck and walked to the side of Bilbrey's car, grabbed the door and began shooting. Green tried to grab defendant's arm, but he pushed her away and knocked her down. He then continued firing at Bilbrey. Bilbrey attempted to drive away, but lost control of the car and hit a mobile home. Without speaking, defendant returned to his truck and left the area quickly.

The police arrived shortly thereafter. An investigation conducted by field agents of the City-County Bureau of Investigation uncovered no weapons on or near Bilbrey's body. An autopsy revealed Bilbrey received four gunshot wounds to the left side of the body. One bullet, which passed through the lung, heart and esophagus was thought to be the key fatal wound, resulting in death within fifteen minutes.

Defendant did not report the shooting to the police. Police began a search for defendant and visited his residence every other day. He was arrested two weeks after the shooting.

Defendant testified in his own behalf. He stated Green had warned him that Bilbrey had guns and had threatened to "get" him. Defendant had seen Bilbrey armed previously and Bilbrey had told defendant that he, Bilbrey, had killed someone in a prior dispute.

Before the shooting, defendant had been fishing with a friend. Because the place where they intended to fish was known for snakes, defendant took his gun with him. After the fishing trip, defendant went to the mobile home park to collect ten dollars which Bilbrey owed him. As defendant was leaving the mobile home park in his truck, Diggs approached him and asked if he and Green could spend the night with defendant. Diggs said Green was afraid that Bilbrey would beat her. About that time, Bilbrey drove up rapidly in his car. An argument between defendant and Bilbrey ensued in which Bilbrey accused defendant of making passes at Green. Bilbrey told Diggs to summon Green. When Green arrived, Bilbrey asked her if she previously informed him that defendant had made passes at her. When

Green denied any knowledge of the matter, Bilbrey called her a "damn lie." He then hit her and attempted to choke her. Defendant attempted to leave the scene but had difficulty starting his truck. Bilbrey released Green and continued to argue with defendant. After telling defendant he was going to show him how an ass acts, he returned to his car. As Bilbrey reached around in his car, defendant believed he was looking for a gun. Defendant testified he panicked and shot Bilbrey. He was unaware of how many times he fired or whether Bilbrey attempted to start his car.

After the shooting, defendant started his truck and drove away. He discarded the gun in a creek near the road. Despite his wife's request to do so, defendant was too afraid to report the incident to the police.

Additional facts will be presented in the discussions of the legal issues to which they are pertinent.

## II.

Defendant first contends the trial court erred by denying his motion to dismiss at the close of all the evidence on the ground the evidence was insufficient to support a verdict of guilty. Defendant contends the evidence falls short of satisfying the State's burden of proof for two reasons: 1) the State's evidence was insufficient to prove premeditation and deliberation; and 2) the State's evidence was insufficient to prove defendant did not act in self-defense.

### A.

[1] Defendant argues that all the evidence shows his intent to kill the victim was formed under the influence of the provocation of the quarrel with the victim; therefore, there was no premeditation and deliberation. We disagree.

The State's proof is sufficient if a rational juror could have found the element of premeditation and deliberation beyond a reasonable doubt. *State v. Sumpter*, 318 N.C. 102, 347 S.E.2d 396 (1986). Upon defendant's motion to dismiss, "the trial court must determine whether there is substantial evidence of each element of the offense charged, or any lesser offense, and that defendant is the perpetrator." *State v. McAvoy*, 331 N.C. 583, 589, 417 S.E.2d 489, 493 (1992).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The term

"substantial evidence" simply means "that the evidence must be existing and real, not just seeming or imaginary." *State v. Powell,* 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

*Id.* "[A]ll evidence must be considered in a light most favorable to the State, and the State is entitled to every inference of fact which may be reasonably deduced from the evidence." *State v. Leroux,* 326 N.C. 368, 375, 390 S.E.2d 314, 320, *cert. denied,* 498 U.S. 871, 112 L. Ed. 2d 155 (1990). If substantial evidence of each element of the offense charged exists, the trial court must deny the motion to dismiss and submit the charge to the jury. *McAvoy,* 331 N.C. at 589, 417 S.E.2d at 493.

The degrees of homicide may be defined as follows: Murder in the first degree is the unlawful killing of another human being with malice and with premeditation and deliberation. N.C.G.S. § 14-17 (1986); *State v. Bonney,* 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991). Murder in the second degree is the unlawful killing of another human being with malice but without premeditation and deliberation. *State v. Robbins,* 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). Voluntary manslaughter is the killing of another human being without malice and without premeditation and deliberation under the influence of some passion or heat of blood produced by adequate provocation. *State v. Tidwell,* 323 N.C. 668, 673, 374 S.E.2d 577, 580 (1989).

"A killing is 'premeditated' if 'the defendant formed the specific intent to kill the victim some period of time, however short, before the actual killing.' " *State v. Morston,* 336 N.C. 381, 402, 445 S.E.2d 1, 12 (1994) (quoting *Bonney,* 329 N.C. at 77, 405 S.E.2d at 154). A killing is with deliberation if the intent to kill is formed in a cool state of blood and not under the influence of passion aroused by sufficient provocation. *State v. Carter,* 335 N.C. 422, 429, 440 S.E.2d 268, 272 (1994); *McAvoy,* 331 N.C. at 589, 417 S.E.2d at 494.

There are two kinds of provocation relating to the law of homicide: One is that level of provocation which negates malice and reduces murder to voluntary manslaughter. *State v. Montague,* 298 N.C. 752, 757, 259 S.E.2d 899, 903 (1979); *State v. Ward,* 286 N.C. 304, 313, 210 S.E.2d 407, 413-14 (1974), *judgment vacated in part,* 428 U.S. 903, 49 L. Ed. 2d 1207 (1976). Mere words, however abusive or insulting are not sufficient provocation to negate malice and reduce the homicide to manslaughter. *State v. McCray,* 312 N.C. 519, 324 S.E.2d 606 (1985). Rather, this level of provocation must ordinarily amount to an assault or threatened assault by the victim against the perpetra-

tor. *State v. Rogers*, 323 N.C. 658, 667, 374 S.E.2d 852, 858 (1989); *State v. Williams*, 296 N.C. 693, 252 S.E.2d 739 (1979).

The other kind of provocation is that which, while insufficient to reduce murder to manslaughter, is sufficient to incite defendant to act suddenly and without deliberation. Thus, words or conduct not amounting to an assault or threatened assault, may be enough to arouse a sudden and sufficient passion in the perpetrator to negate deliberation and reduce a homicide to murder in the second degree. *State v. Corn*, 303 N.C. 293, 278 S.E.2d 221 (1981); *State v. Misenheimer*, 304 N.C. 108, 114, 282 S.E.2d 791, 795-96 (1981); *State v. Thomas*, 118 N.C. 1113, 1124, 24 S.E. 431, 434-35 (1896).

Here defendant, relying on *Corn*, contends the State did not prove the elements of premeditation and deliberation. Essentially defendant's argument is that all the evidence shows defendant acted under the provocation arising from his quarrel with the victim which negated deliberation. In *Corn*, all the evidence showed the victim entered defendant's house while intoxicated, began arguing with defendant and accused defendant of being a homosexual, whereupon defendant shot and killed the victim. The Court concluded that the State failed to show premeditation and deliberation because the evidence revealed the shooting was a sudden event brought on by sufficient provocation from the victim. The Court said:

> There is no evidence that defendant acted in accordance with a fixed design or that he had sufficient time to weigh the consequences of his actions. Defendant did not threaten [the deceased] before the incident or exhibit any conduct which would indicate that he formed any intention to kill him prior to the incident in question. There was no significant history of arguments or ill will between the parties. Although defendant shot deceased several times, there is no evidence that any shots were fired after he fell or that defendant dealt any blows to the body once the shooting ended.

*Id.* at 298, 278 S.E.2d at 224.

Unlike the circumstances in *Corn*, all the evidence in the present case did not show defendant was provoked into shooting the victim. Rather, there was evidence tending to show preparedness on the part of defendant to kill the victim before the argument between them ensued. Before their argument defendant procured a gun and placed it by his side in the truck where he was seated. Further, there was evi-

dence that after the argument had ended, and the victim had withdrawn, there was time for defendant's blood to have cooled before the shooting occurred. The evidence showed that after the argument between the victim and defendant had ceased and the victim had returned to his car, defendant got out of his vehicle, walked over to the victim and began to shoot the victim several times. Unlike *Corn*, in which the victim's verbal assault immediately provoked defendant's shooting, there was evidence here that any provocation resulting from the argument between defendant and the victim had had time to dissipate before defendant shot and killed the victim.

Defendant's mere anger at the victim is not alone sufficient to negate deliberation. " '[C]ool state of blood' does not mean the perpetrator was devoid of passion or emotion." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595-96 (1992). " 'A perpetrator may deliberate, premeditate, and may intend to kill after premeditation and deliberation, although prompted to a large extent and controlled by passion at the time.' " *Id.* (quoting *State v. Vause*, 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991)).What is required to negate deliberation, as we have shown above, is a sudden arousal of passion, brought on by sufficient provocation during which the killing immediately takes place.

Aside from the evidence of the quarrel, which, we have concluded, is not enough to negate deliberation as a matter of law, there was other evidence sufficient to support the jury's finding of both deliberation and premeditation. Premeditation and deliberation ordinarily are not susceptible to proof by direct evidence; therefore, they generally must be proved by circumstantial evidence, such as,

> "(1) want of provocation on the part of the deceased, (2) conduct and statements of the defendant before and after the killing, (3) threats made against the victim by defendant, (4) ill will or previous difficulty between the parties, and (5) evidence that the killing was done in a brutal manner."

*State v. Woodard*, 324 N.C. 227, 230-31, 376 S.E.2d 753, 755 (1989) (quoting *State v. Calloway*, 305 N.C. 747, 751, 291 S.E.2d 622, 625-26 (1982)).

Here evidence tended to show ill will between defendant and the victim. Sometime prior to the fatal shooting, defendant had been informed that the victim was jealous of defendant and had threatened to harm him. To this, defendant responded that he would "get him

back." Before the victim's fatal encounter with defendant, defendant was sitting in his truck talking to Diggs. As the victim approached, Diggs observed defendant remove a gun from a bag and place it beside his leg. At the time of the shooting, defendant left his truck, walked over to the victim's car and shot the victim several times while pushing Green aside.

The jury's findings were also supported by evidence regarding the nature of the shooting. Under the "felled victim theory" of premeditation and deliberation, "when numerous wounds are inflicted, the defendant has the opportunity to premeditate from one shot to the next." *State v. Austin*, 320 N.C. 276, 295, 357 S.E.2d 641, 653, *cert. denied*, 484 U.S. 916, 98 L. Ed. 2d 224 (1987). Even where the gun is capable of being fired rapidly, "some amount of time, however brief, for thought and deliberation must elapse between each pull of the trigger." *Id.*; *see also State v. Brogden*, 329 N.C. 534, 543, 407 S.E.2d 158, 164 (1991) (felled victim theory supported by testimony of defendant's wife that there was a "pause" between shots). Here, Harrell testified that at the time of the shooting, she heard four shots: "first a 'pow' and just a little hesitation and then three more consecutive from there." Agent Creasy, assigned to the Trace Evidence Section of the SBI Crime Laboratory, testified that one explanation for the concentration of gunshot residue on the victim's left hand is that the victim had raised his left hand to fend off an attack.

We conclude the trial court did not err in denying defendant's motion to dismiss for lack of evidence showing premeditation and deliberation.

B.

[2] Nor did the trial court err in denying defendant's motion to dismiss on the ground that the State failed to prove defendant did not act in self-defense. The principles regarding the law of self-defense have been set out by this Court in *State v. McAvoy*, 331 N.C. 583, 417 S.E.2d 489. The elements which constitute perfect self-defense are:

1) It appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

2) Defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

3) Defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

4) Defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*Id.* at 595, 417 S.E.2d at 497 (quoting *State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981)); *accord State v. Maynor*, 331 N.C. 695, 699, 417 S.E.2d 453, 455 (1992).

Whenever there is evidence that a defendant charged with a homicide killed in self-defense, the State has the burden of proving beyond a reasonable doubt that he did not. *State v. Potter*, 295 N.C. 126, 143, 244 S.E.2d 397, 408 (1978).

This Court has recognized two categories of self-defense, perfect self-defense, which is a complete defense, and imperfect self-defense, which is a partial defense resulting in defendant's guilt of voluntary manslaughter. *Maynor*, 331 N.C. at 699, 417 S.E.2d at 455-56. Perfect self-defense exists where there is evidence of all four elements of self-defense and the State fails to prove beyond a reasonable doubt the non-existence of any of the four elements. *McAvoy*, 331 N.C. at 595-96, 417 S.E.2d at 497. Imperfect self-defense exists where there is evidence of the first two elements of self-defense and the State fails to prove beyond a reasonable doubt the non-existence of either element but does prove beyond a reasonable doubt that defendant either used excessive force or was the aggressor in bringing on the affray. *Id.*

To negate the defense of self-defense altogether, the State need only prove beyond a reasonable doubt the non-existence of either the first or second element, i.e., either defendant had no belief that it was necessary to kill to save himself from death or great bodily harm, or that defendant's belief, if he had one, was unreasonable because the circumstances as they appeared to defendant were not sufficient to create such a belief in the mind of a person of ordinary firmness. *State v. Reid*, 335 N.C. 647, 670, 440 S.E.2d 776, 789 (1994).

The question before us is whether there is some evidence from which the jury could find beyond a reasonable doubt that defendant's belief in the need to kill was unreasonable. We conclude there is. While there was evidence from which the jury could have found that

defendant's belief was reasonable, there was also evidence from which the jury could have found that it was not. For example, Green testified that when the victim got into his car, he made no motions or movement "other than just shutting the door and trying to start the car." From this testimony the jury could have found that the victim did nothing to create a reasonable fear of imminent danger in the mind of a person of ordinary firmness. Corroborating Green's testimony was the testimony of various other witnesses that the victim did not have a gun. Additionally, no gun was found on the victim or at the scene of the shooting. Further evidence of the unreasonableness of defendant's belief in the need to kill included that tending to show his hasty departure from the scene and subsequent false statements to the police, from which the jury could have inferred that defendant harbored a sense of guilt inconsistent with a killing justified on the basis of self-defense. Defendant's own statement that "[i]t happened so quick and fast and I just panicked and shot him" could have been interpreted by the jury as an admission that the shooting was an overreaction. Considering this evidence in the light most favorable to the State, we hold the trial court was correct in concluding that a rational jury could find beyond a reasonable doubt that defendant's belief in the need to kill was unreasonable.

### III.

[3] Defendant next contends the trial court erred by failing to instruct the jury that it could return a verdict of voluntary manslaughter if the State failed to prove defendant did not believe it necessary to kill, even if it proved this belief was unreasonable. Defendant's argument is that an honest, but unreasonable, belief in the need to kill, is tantamount to the use of excessive force, and should result in a verdict of voluntary manslaughter on the theory of imperfect self-defense. While acknowledging that the instructions given were correct under *State v. McAvoy*, 331 N.C. 583, 417 S.E.2d 489, defendant asks this Court to reconsider its analysis in *McAvoy* and hold that defendant's belief in the need to kill need not be reasonable for the jury to find he acted in self-defense.

We note that defendant properly has informed the Court that he made no objection at trial to the trial court's instructions on this ground. Our review of this matter therefore is for plain error. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). However, "[a] prerequisite to our engaging in a 'plain error' analysis is the determination that the instruction complained of constitutes 'error' at all." *State v. Torain*,

316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 71 (1986). Here we find no error in the trial court's instructions.

In *McAvoy*, this Court considered the same issue that defendant now argues. The *McAvoy* Court resolved two inconsistent lines of authority on the law of self-defense and concluded an unreasonable though honest belief in the need to kill was insufficient to justify a killing on the ground of self-defense. The Court concluded that an honest but unreasonable belief in the need to kill is not equivalent to the use of excessive force and that there is no inconsistency in a verdict of voluntary manslaughter on the basis of imperfect self-defense based on the use of excessive force and a verdict of first-degree murder resulting from defendant's unreasonable belief in the need to kill. *Id.*

In *State v. Maynor*, the Court reached the same conclusion, holding that

> a trial court is not required to instruct on either perfect or imperfect self-defense with regard to a charge of murder "unless evidence was introduced tending to show that at the time of the killing, the defendant *reasonably* believed" it necessary to kill the victim in order to save himself from imminent death or great bodily harm. *State v. Norman*, 324 N.C. 253, 260, 378 S.E.2d 8, 12 (1989).

*Maynor*, 331 N.C. at 700, 417 S.E.2d at 456 (emphasis original). We conclude *McAvoy* and *Maynor* were correctly decided, and we decline to reconsider or disturb their holdings. Based on these prior decisions, we conclude the trial court did not commit error by refusing to instruct the jury as suggested by defendant.

Defendant next contends that even under the law announced in *McAvoy and Maynor*, self-defense should require a reasonable belief only in the need "to use deadly force" rather than the need "to kill" so that juries can better assess the propriety of the degree of deadly force used by defendant. Defendant contends had the jury been instructed in this manner, it "could well have decided that some form of deadly force—such as firing one shot at a nonvital part of the body—would have been appropriate, but that firing four shots, including one into the heart, was excessive."

We think that, as a general proposition, instructing a jury in terms of the need "to use deadly force," rather than "to kill," could be appro-

priate if the evidence supported such an instruction. How to phrase these instructions depends on the nature of the evidence in the case. If the evidence is that defendant intended to use deadly force, to disable the victim but not to kill him, it would be appropriate to instruct in terms of the need to use deadly force, rather than the need to kill, and in terms of whether the amount of deadly force used was excessive under the circumstances.

Where the evidence shows, as it does here, an intent to kill rather than an intent to use deadly force, the trial court should instruct the jury, as it did, in terms of the need to kill. Here, defendant testified that he approached the victim as the victim was entering his car, "panicked and shot him." Other witnesses testified that defendant shot the victim several times while holding the gun "inches" from his head. An autopsy revealed four gunshot wounds to the victim's body, one of which penetrated the victim's lung, heart and esophagus. Expert testimony indicated that gunshot residue on the victim's hands could have been the result of the victim raising his hand to fend off the attack by defendant. All the evidence shows that defendant intended to kill the victim. None showed that he intended merely to use deadly force to disable but not to kill the victim. In light of all the evidence concerning defendant's intent, we conclude the trial court properly charged the jury in terms of defendant's belief in a need to kill, rather than in terms of his belief in a need to use deadly force.

IV.

[4] Defendant next contends that the trial court committed plain error by instructing the jury that premeditation and deliberation could be inferred from certain circumstances, including the victim's lack of provocation. Defendant argues there was no evidence showing a lack of provocation by the victim. Again, we disagree.

The trial court, over defendant's objection, gave the jury the following pattern jury instruction on premeditation and deliberation:

Neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred, such as the lack of provocation by the victim, conduct of the defendant before, during and after the killing, threats and declarations of the defendant, use of grossly excessive force, infliction of lethal wounds after the victim is felled, brutal or vicious circumstances of the killing or manner in which or means by which the killing was done.

As we have already discussed in Section II of this opinion, all the evidence before the jury did not show defendant acted under provocation. There was some evidence to show that defendant acted independently of any provocation, which is the legal equivalent of acting in the absence of provocation.

Defendant contends the trial court's instruction on the circumstances from which premeditation and deliberation might be inferred could have been misunderstood by the jury to mean that the State had proven the circumstances mentioned, leaving the jury to decide only whether the facts showed premeditation and deliberation. This argument is rejected on the authority of *State v. Stevenson*, 327 N.C. 259, 393 S.E.2d 527 (1990). In that case, the defendant assigned error to an instruction on premeditation and deliberation identical to the present instruction and argued that "the instruction could be understood by the jury as an opinion . . . of the court that the absence of provocation had been proven." *Id.* at 264, 393 S.E.2d at 529. The Court dismissed this argument holding that "the trial court's mere recital of such examples cannot be construed as an expression of an opinion that any of them have been proven." *Id.*

## V.

**[5]** Defendant next contends the trial court erred by instructing the jury on flight as evidence of guilt. Pursuant to North Carolina Pattern Instructions, N.C.P.I.-Crim. 104-35 and 104-36, the trial court instructed the jury as follows:

> The State contends that the defendant fled. Evidence of flight may be considered by you, together with all the facts and circumstances in this case, in determining whether the combined circumstances amount to an admission or show consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish the defendant's guilt. Further, this circumstance has no bearing on whether the defendant acted with premeditation and deliberation. Therefore, it must not be considered by you as evidence of premeditation or deliberation.

Defendant contends this instruction was error for two reasons: First, it was not supported by the evidence presented; and second, the instruction, as given, failed to apply fully and fairly the law to the facts of the case and constituted an impermissible expression of opinion by the trial court about the case.

We find no merit in these arguments. In *State v. Tucker*, 329 N.C. 709, 407 S.E.2d 805 (1991) this Court said:

"[F]light from a crime shortly after its commission is admissible as evidence of guilt." *State v. Self*, 280 N.C. 665, 672, 187 S.E.2d 93, 97 (1972), and a trial court may properly instruct on flight "[s]o long as there is some evidence in the record reasonably supporting the theory that defendant fled after the commission of the crime charged," *State v. Greene*, 321 N.C. 594, 607, 365 S.E.2d 587, 595, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988) (quoting *State v. Irick*, 291 N.C. [480,] 494, 231 S.E.2d [833,] 842 [(1977)]).

*Id.* at 722, 407 S.E.2d at 813. The Court held in *Tucker* that the trial court's instruction on flight, which was identical to the instruction given in the instant case, was proper when the jury heard evidence "that defendant shaved off a beard and mustache within two days of the murder, that police began looking for him two months later, and that he was not found until three years after the murder—in Texas." *Id.*

We find here evidence supporting the flight instruction. There was evidence that defendant immediately sped away in his truck after shooting the victim five times. Although aware that police officers had visited his house in search of him, defendant did not contact the police or return home for two weeks following the shooting.

We further reject defendant's contention that he was prejudiced by the trial court's instruction. As stated in *Tucker*, "it was for the jury to decide whether these facts taken together with other facts and circumstances, supported the State's contention that defendant had fled." *Id.* at 723, 407 S.E.2d at 813. Here, prior to giving the instruction, the trial court appropriately instructed the jury as follows:

> You are the sole judges of the weight to be given any evidence. By this I mean, if you decide that certain evidence is believable, you must then determine the importance of that evidence in light of all other believable evidence in the case.

The trial court also accurately informed the jury that it was the contention of the State, not the trial court, that defendant fled. While there might have been explanation for defendant's unavailability other than flight from arrest and prosecution, these are best left to argument of counsel. Had defendant wanted such an explanation to be suggested in the court's instructions to the jury, he should have expressly requested such an instruction. No such request was made.

We conclude the instruction on flight was supported by the evidence and was not an expression of opinion from the bench. *Id.* at 723, 407 S.E.2d at 814.

VI.

**[6]** Defendant next contends the trial court committed plain error by failing to instruct, *ex mero motu*, that a person who is without fault and who reasonably believes that an attack is being made with felonious intent has no duty to retreat. We find no error.

A person attacked with deadly force and who is free from fault in bringing on the attack, has no duty to retreat, "but may stand his ground and kill his adversary, if need be." *State v. Pearson*, 288 N.C. 34, 39-40, 215 S.E.2d 598, 603 (1975). Here, however, there was nothing in the evidence giving rise to defendant's lack of duty to retreat. Defendant, not the victim, was the aggressor. The evidence is that after the victim quit the argument and returned to his vehicle, defendant left his vehicle, walked over to the victim's car and began shooting. The evidence reveals no attack or attempted attack launched by the victim. The trial court, therefore, did not commit error, much less plain error, in failing to give an instruction on defendant's having no duty to retreat.

VII.

**[7]** Defendant next contends the trial court erred by sustaining the State's objection to cross-examination of a prosecution witness concerning the character of the deceased. During cross-examination of State witness Diggs, the following transpired:

BY MR. GASKINS:

Q.  Have you seen [the victim] when he was intoxicated before?

A.  Yes.

Q.  Did you consider him to be particularly dangerous when he was intoxicated?

MR. HAISLIP: Objection.

COURT: Sustained.

Defendant contends the trial court's ruling amounted to prejudicial error because it prevented defense counsel from investigating an important aspect of the victim's character. According to defendant, the "central question" was whether defendant "reasonably believed he had to shoot [the victim] in order to defend himself, and "[a]ssessing the threat posed by [the victim's] violent character was a crucial part of that inquiry. . . . Testimony about the impact of intoxication on

[the victim's] generally violent character would have given the jury valuable information for evaluation [sic] the reasonableness of appellant's belief that [the victim] was about to shoot him."

As a general rule, evidence of a victim's character is not admissible. N.C.G.S. § 8C-1, Rule 404(a) (1992). The rule, however, has exceptions. An accused, for example, may introduce "[e]vidence of a pertinent trait of character of the victim" that is relevant to an issue in the case. *State v. Squire*, 321 N.C. 541, 364 S.E.2d 354 (1988). Where an accused argues that he acted under self-defense, the victim's character may be admissible for two reasons: to show defendant's fear or apprehension was reasonable or to show the victim was the aggressor. *State v. Winfrey*, 298 N.C. 260, 258 S.E.2d 346 (1979).

Defendant may admit evidence of the victim's character to prove defendant's fear or apprehension was reasonable and, as a result, his belief in the need to kill to prevent death or imminent bodily harm was also reasonable. *Id.* Such evidence may be proved by opinion testimony. N.C.G.S. § 8C-1, Rule 405(a) (1992). Rule 404(a)(2), however, does not govern its admission. 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 90, p. 275 (4th ed. 1993). "The purpose of such evidence is not to prove conduct by the victim, but to prove defendant's state of mind." *Id.*; Rule 404 cmt. Such an opinion is relevant on the issue of defendant's state of mind only to the extent that defendant has knowledge of this opinion. *State v. Johnson*, 270 N.C. 215, 218-19, 154 S.E.2d 48, 51 (1967). When defendant knows of the violent character of the victim, such evidence is relevant and admissible to show to the jury that defendant's apprehension of death and bodily harm was reasonable. *Id.* at 219-20, 154 S.E.2d at 52. "[A] jury should, as far as is possible, be placed in defendant's situation and possess the same knowledge of danger and the necessity for action, in order to decide if defendant acted under reasonable apprehension of danger to his person or his life." *Id.*

Here the evidence concerned State's witness Diggs's opinion of the victim's dangerousness. Because there is no showing that defendant had knowledge of Diggs' opinion of the victim's dangerousness, the evidence was irrelevant on the issue of whether defendant's belief in the need to kill the victim was reasonable.

Evidence of the victim's character may also be admissible "because it tends to shed some light upon who was the aggressor since a violent man is more likely to be the aggressor than is a peaceable man." *Winfrey*, 298 N.C. at 262, 258 S.E.2d at 348. Defendant, to

prove that the victim was the aggressor, may present evidence of the victim's violent character, "whether known or unknown to the defendant at the time of the crime." Broun, § 90, p. 273; *State v. Barbour*, 295 N.C. 66, 243 S.E.2d 380 (1978). "The relevancy of such evidence stems from the fact that in order to sustain a plea of self-defense, it must be made to appear to the jury that the accused was not the aggressor. *See State v. Wynn*, 278 N.C. 513, 180 S.E.2d 135 (1971)." *Winfrey*, 298 N.C. at 262, 258 S.E.2d at 348.

Because the jury was instructed on self-defense and was required to determine who was the aggressor in the affray, it was error for the trial court not to permit the jury to hear evidence regarding the victim's violent character. Such error, however, was harmless. First, the trial court gave defendant wide latitude in cross-examining Diggs. As a result, defendant was able to elicit extensive testimony concerning the victim's reputation for violence. Additionally Diggs testified he saw the victim, while intoxicated, strike Green. This evidence being before the jury, we conclude defendant was not prejudiced by the exclusion of Diggs's opinion. Second, defendant did not make an offer of proof so as to place Diggs's response to the question in the record. "[I]n order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Hester*, 330 N.C. 547, 555, 411 S.E.2d 610, 615 (1992) (quoting *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985)); *see also* N.C.G.S. § 8C-1, Rule 103(a)(2) (1992); N.C.G.S. § 15A-1446(a) (1988). Since we have no way of knowing what Diggs's response would have been, we cannot assess the significance of the evidence sought to be elicited.

Defendant's assignment of error is overruled.

VIII.

[8] Defendant next contends the trial court erred by overruling defendant's objection to questions posed by the State to its expert witness S.B.I. Agent Creasy regarding his gunshot residue analysis. Defendant argues that while an expert may base an opinion upon facts in the record, Creasy's testimony amounted to an opinion based on an assumed fact unsupported by evidence—that the victim raised his hand to fend off an attack or blast from a gun.

Creasy was examined directly as follows:

**STATE v. WATSON**

[338 N.C. 168 (1994)]

Q.  If, if the facts or circumstances as described to you ruled out the possibility of suicide, then with what other circumstances would findings that you made be consistent?

A.  It could be consistent with the muzzle blast of a firearm; in other words, the hand being in close proximity to the muzzle when the firearm is discharged.

. . . .

Q.  Would the findings you observed on the left hand, the findings you observed in the wipings and from the left hand of [the victim], would they be consistent with for example [the victim] raising his hand somewhat to fend off an attack or blast from a gun?

MR. GASKINS: Objection. The evidence is directly opposed to that.

COURT: Repeat the question please. I didn't get the last part of it. Say it again.

BY MR. HAISLIP:

Q.   Would the findings you observed in the handwipings taken from [the victim]'s left hand or from the hand of the victim, would those wipings, the findings you made be consistent with [the victim] having raised that hand to fend off an attack or blast from the muzzle of a gun?

MR. GASKINS: Objection.

MR. O'DONNELL: Objection.

COURT: Overruled. You may answer.

A.   Yes, sir, that would be one explanation for those concentrations on his left hand.

Rule 702 of the North Carolina Rules of Evidence provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion." N.C.G.S. § 8C-1, Rule 702 (1992). Here, Creasy qualified as an expert in the analysis of gunshot residue and trace evidence. He did not base his opinion on any assumed fact. Rather, he gave his findings and expressed his opinion that these findings were consistent with the victim having raised his hand in response to an attack. Creasy's

opinion thus became evidence that supported the State's theory that the victim raised his hand to fend off defendant's attack. The testimony was admissible as it assisted the jury in understanding the reach and import of Creasy's gunshot residue findings. *State v. Benjamin*, 83 N.C. App. 318, 319-20, 349 S.E.2d 878, 879 (1986) (opinion by Judge (now Justice) Webb); *State v. Crawford*, 329 N.C. 466, 477, 406 S.E.2d 579, 585 (1991). Defendant's assignment of error to this testimony is overruled.

IX.

**[9]** In his final assignment of error, defendant contends the trial court erred by failing to determine in open court whether the jury wanted to ask a question during its deliberation. The portion of the trial transcript material to this issue reveals the following:

> COURT: The defendant is in the courtroom with counsel, the Assistant District Attorney. Let the record show that the jurors knocked on the door. One of the jurors said they had a question. The Court instructed the Sheriff to give them a yellow pad, stand at the door and tell them to write the question out. We're awaiting the question.
>
> Knock on the door and ask if they have the question prepared.
>
> BAILIFF: They don't have it yet.
>
> COURT: All right.
>
> Sheriff, it's been fifteen minutes since the jury said they had a question. Take the defendant back to lock-up so we can work on some other matters here.
>
> JURY CONTINUES TO DELIBERATE.

Defendant contends the trial court's handling of the jury's communication to the bailiff amounted to an unconstitutional *ex parte* communication with the jury. We disagree.

Article I, section 23 of the North Carolina Constitution provides:

> In all criminal prosecutions, every person charged with crime has the right to be informed of the accusation and to confront the accusers and witnesses with other testimony, and to have counsel for defense, and not be compelled to give self-incriminating evidence, or to pay costs, jail fees, or necessary witness fees of the defense, unless found guilty.

N.C. Const. art. I, § 23. Similar protection is afforded defendant by the Sixth Amendment of the federal constitution. "This protection guarantees an accused the right to be present in person at every stage of his trial." *State v. Payne*, 320 N.C. 138, 139, 357 S.E.2d 612, 613 (1987); *State v. Pittman*, 332 N.C. 244, 253, 420 S.E.2d 437, 442 (1992).

For a defendant tried noncapitally, "this right [is] a personal right which [can] be waived, either expressly, or by his failure to assert it." *Pittman*, 332 N.C. at 253, 420 S.E.2d at 442; *State v. Braswell*, 312 N.C. 553, 559, 324 S.E.2d 241, 246 (1985). In the instant case defendant, having failed to object at trial, waived his right and cannot assign as error the trial court's denial of the right.

Even if defendant had not waived his right to be present, we would find no error in the trial court's actions. It is error for the trial court to issue substantive instructions, either personally or through its bailiff, to the jury outside the presence of the defendant. *State v. Ashe*, 314 N.C. 28, 331 S.E.2d 652 (1985); *State v. Payne*, 320 N.C. 138, 357 S.E.2d 612. However, a defendant's right to be present is not violated where a trial court merely instructs the jury on procedural matters through its bailiff, as the court did in the instant case. *State v. Gay*, 334 N.C. 467, 434 S.E.2d 840 (1993). In *Gay*, the defendant assigned as error the trial court's instructions to the bailiff to inform the jury "to take or extend a recess during evidentiary hearings or discussions of legal issues" and to continue to abide by the trial court's earlier instructions while on break. *Id.* at 482, 434 S.E.2d at 848. The transcript revealed that the defendant neither objected to the instruction nor requested to be heard on the matter. *Id.* This Court held that while "shorthand procedures, such as the one instituted by the trial court in this case, may run the risk of violating defendant's right to be present, [there was no] reversible error on these facts." *Id.* at 482-83, 434 S.E.2d at 848. In so holding, the Court stated,

We observe initially that it would be unreasonable to hold that bailiffs may have no contact with the jury. In carrying out their custodial duties bailiffs must necessarily engage in some contact with the jury or prospective jurors. While a bailiff certainly may not attempt to instruct jurors as to the law, a simple reminder by the bailiff to the jurors that they are to abide by the court's earlier instructions should not be considered an instruction as to the law.

*Id.* at 482, 434 S.E.2d at 848.

Similarly in *State v. May,* 334 N.C. 609, 615, 434 S.E.2d 180, 183 (1993), *cert. denied,* ___ U.S. ___, 127 L. Ed. 2d 661 (1994), this Court found no violation of the right of confrontation where the trial court, without objection from defendant, instructed the bailiff to tell the jurors to take a fifteen-minute break. Upon concluding there was no constitutional violation, the Court stated,

> It was not error for the court to send this message by the bailiff to the jury. It would impose a heavy burden on our courts if a court reporter were required to accompany a bailiff every time he is with a jury in order to make a record of what was said.

*Id.*

In the present case the bailiff was instructed only to retrieve a question from the jury and bring it to the trial court. No objection was raised by defendant or his counsel. So long as the record shows nothing to the contrary, we assume the bailiff followed the court's instructions. *Id.* As stated in *Gay:* "Communications such as these do not relate to defendant's guilt or innocence. Nor would defendant's presence have been useful to his defense." *Gay,* 334 N.C. at 482, 434 S.E.2d at 848. We find no violation of defendant's constitutional rights.

As for the trial court's failure to determine in fact whether the jury wanted to ask a question, we find no error. After being informed off the record that the jury may have a question, the trial court, in defendant's presence, instructed the sheriff to request that the jury write its question on a legal pad. He further instructed the sheriff to wait outside the jury room until the jury produced the question, at which time the sheriff was to bring it to the court. No objection was made by defendant. The sheriff waited approximately fifteen minutes during which time the jury never produced its question for the court. Apparently considering the jury's request to submit a question abandoned, the trial court announced its intention to move on to other matters and to reincarcerate defendant for the remainder of the jury's deliberation. At no time during subsequent deliberation did the jury resurrect its request to ask a question.

Thus, the record shows that while the jurors may have had a question at one time during deliberation, they were able to resolve the query among themselves. The jurors were free to inform the trial court, either directly while in the courtroom before recessing for the day or through the bailiff, that their question remained unanswered.

Furthermore, defendant was free to object and request the trial court conduct the jurors into the courtroom to confirm that they no longer had a question. Neither was done. Defendant's assignment of error is overruled.

For the foregoing reasons, we conclude defendant received a fair trial free from prejudicial error.

NO ERROR.