STATE OF NORTH CAROLINA v. CARLTON DONNELL MONTAGUE

No. 64

(Filed 4 December 1979)

**1. Homicide § 28.1 — self-defense — instruction not required**

The trial court in a homicide prosecution properly refused to instruct on self-defense where the evidence tended to show that when four college students, including the two victims, first passed defendant and his two companions, defendant produced a pistol and said, "Well, if they really want to start something, I got something too"; and when the students passed defendant and his companions a second time, defendant willingly left his place of safety on a wall and aggressively entered a fight among the students and his companions without lawful excuse or adequate provocation.

**2. Homicide § 30.3 — lesser offense of voluntary manslaughter — instruction not required**

The trial court in a first degree murder prosecution did not err in failing to instruct on the lesser included offense of voluntary manslaughter, since the State's evidence did not permit a reasonable inference that the killings resulted from such provocation as would temporarily dethrone reason and displace malice, and defendant's evidence tended to show that he did not intentionally assault anyone with a deadly weapon and if anyone was fatally injured by the use of his weapon, it was accidental or at most the injury proximately resulted from his culpable negligence; furthermore, there was no merit to defendant's contention that the element of malice was rebutted by his evidence even though it did not fall within the definition of self-defense or heat of passion.

APPEAL by defendant from *Braswell, J.*, 15 January 1979 Criminal Session of WAKE Superior Court.

Defendant was charged in separate bills of indictment with the crime of first-degree murder. In Case No. 78CRS51221, he was

charged with the first-degree murder of Geoffrey Michael McArthur, and in Case No. 78CRS51222, defendant was charged with the first-degree murder of Farley Delano Chesley. Defendant entered a plea of not guilty in each case, and the cases were consolidated for trial.

The State offered evidence tending to show that in the early morning hours of 24 August 1978, four Shaw University students Farley Chesley, Geoffrey McArthur, Derrick Owens and Greg Haley left the University campus and walked down Smithfield Street in route to Vedie's Store which was located on the corner of Smithfield and Bloodworth Streets. They passed three men later identified as Elvin Edward Poole, Joseph Norris and Carlton Donnell Montague, the defendant herein. McArthur asked one of the men if he got the change that he wanted, and one of the other group said that he did not know what he was talking about. After the students proceeded toward the store, Norris hid a pole in the bushes to be used "if they start something." Defendant produced a pistol from an Army backpack and said, "Well, if they really want to start something, I got something, too."

As the Shaw students returned from the store, McArthur and Owens were walking together in front of Chesley and Haley. When they approached the corner, Norris was standing near a wall, and defendant and Poole were seated on the wall. At this point, McArthur said, "Later, brothers," to which Norris responded, "I ain't your g--d--- brother." Chesley then stopped, and after an exchange of words, he removed his coat, handed it to Haley and started to walk toward Norris. At this time, there had been no words or acts directed toward defendant; however, as Chesley moved toward Norris, defendant shouted, "Y'all call your home, boy." He then took the pistol from the backpack and hid it behind his leg. When defendant moved, Chesley took about two steps toward him whereupon defendant ran into the street behind Norris and toward the Shaw students. He then proceeded around Norris to a position in the middle of the street where he fired five shots. One shot fatally injured Farley Chesley, and another shot struck and killed Geoffrey McArthur, who was standing on the sidewalk beyond Chesley. McArthur had never made any move toward defendant. There was evidence that during the course of the evening defendant had drunk "a dollar" shot of liquor and

smoked about seven "joints" of marijuana. The State also offered corroborative evidence consistent with the above-stated facts.

Defendant testified and the essence of his defense is contained in the following portion of his testimony:

> . . . I ran into the street because all of them was coming, they was coming back down the street. I ran into the street because if a fight was going to start I won't going to be right there. They were going to beat us up.

> . . . When I started to go into the street, I put the pistol in my back pocket. I put it there to protect myself. If they was all coming back down the street, I just stuck it in my back pocket and I ran out into the street and I was running up the street. And that's when I heard some footsteps running behind me. Some high-heel shoes running behind me. So I turned around. I was scared because I figured all of them was right behind me. I was trying to get all of them from coming back down the street, away from Junior and Little Joe. So when I ran and heard the footsteps, I turned around and I shot the gun into the pavement. I did not shoot at anybody with the shot. I know that bullet hit the pavement, because it made a sping noise. When I shot into the street, I was nervous. It scared me and I was just scared.

> I did not at any time point the pistol at any one of the four boys and intentionally try to shoot them. . . . I fired into the street to keep the guys from coming at me.

In addition to his testimony, defendant offered several witnesses who testified to his good character.

Judge Braswell submitted to the jury the possible verdicts of guilty of first degree murder, guilty of second degree murder, guilty of involuntary manslaughter and not guilty. The jury returned a verdict of murder in the second degree in each case. Defendant appealed from judgments imposing a life sentence in each case.

*Rufus L. Edmisten, Attorney General, by Thomas J. Ziko, Associate Attorney, for the State.*

*W. G. Ransdell, Jr., for defendant appellant.*

BRANCH, Chief Justice.

[1]  Defendant first assigns as error the failure of the trial judge to charge on self-defense.

The court is required to charge on all substantial and essential features of a case which arise upon the evidence, even absent a special request for the instruction. When supported by the evidence, self-defense is a substantial and essential feature of a criminal case. *State v. Deck*, 285 N.C. 209, 203 S.E. 2d 830 (1974). Therefore, the answer to this assignment of error lies in whether there was sufficient evidence to support an instruction on self-defense. In resolving this question, the facts must be interpreted in the light most favorable to defendant, and when his evidence is sufficient to invoke the doctrine of self-defense, the instruction must be given even though the State's evidence is contradictory. *State v. Watkins*, 283 N.C. 504, 196 S.E. 2d 750 (1973).

"One may kill in self-defense if he is without fault in bringing on the affray, and it is necessary or appears to him to be necessary to kill his adversary to save himself from death or great bodily harm the reasonableness of his apprehension being for the jury to determine from the circumstances as they appeared to him." 6 Strong's N.C. Index 3d, *Homicide*, sec. 9 (1978). Thus, if a person willingly and aggressively without legal provocation or excuse enters into a fight, he cannot invoke the doctrine of self-defense. *State v. Watkins, supra; State v. Randolph*, 228 N.C. 228, 45 S.E. 2d 132 (1947).

Here the evidence discloses that when the Shaw students first passed defendant and his companions, defendant produced a pistol and said, "Well, if they really want to start something, I got something too." When the students returned from the store on the way to the Shaw campus, McArthur and Norris exchanged some insulting words and Chesley walked toward Norris. At this point, no one had spoken to or in any way threatened defendant. Even so, from his place of safety on the wall, he shouted, "Y'all call home boy," and thereupon took his pistol from his backpack. After defendant moved to obtain his pistol, Chesley took two or three steps toward defendant. Defendant then ran behind Norris into the street and fired the fatal shots. It appears from the evidence that defendant left a place of safety and aggressively and willingly entered into a fight without lawful excuse or ade-

quate provocation. The trial judge, therefore, correctly refused to instruct on self-defense.

[2] Defendant next assigns as error the failure of the trial judge to submit and instruct on the lesser included offense of voluntary manslaughter.

Voluntary manslaughter is a lesser included offense of murder in the first degree, and when there is evidence to support the lesser included offense, defendant is entitled to have voluntary manslaughter submitted to the jury under proper instructions. *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Robinson*, 188 N.C. 784, 125 S.E. 617 (1924).

We need not consider defendant's argument that defendant was entitled to this instruction on the ground that while acting in self-defense, he used excessive force since we have held that his evidence does not support a claim of self-defense. However, defendant strongly argues that voluntary manslaughter should have been submitted to the jury on the theory that defendant fired the fatal shots while under the influence of sudden passion aroused by adequate provocation.

Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. Presumptions that a homicide was unlawful and done with malice arise upon proof or admission of an intentional killing with a deadly weapon and also when the defendant intentionally assaults another with a deadly weapon and thereby proximately causes the death of the person assaulted. *State v. Woods*, 278 N.C. 210, 179 S.E. 2d 358 (1971); *State v. Gordon*, 241 N.C. 356, 85 S.E. 2d 322 (1955).

> Voluntary manslaughter is the unlawful killing of a human being without malice, express or implied, and without premeditation or deliberation. (Citations omitted.) One who kills a human being while under the influence of passion or in the heat of blood produced by adequate provocation is guilty of manslaughter. (Citations omitted.)

*State v. Wynn*, 278 N.C. 513, 518, 180 S.E. 2d 135, 139 (1971).

In order for a homicide to be reduced from second-degree murder to voluntary manslaughter on the theory that a defendant

acted under the influence of sudden passion, the heat of passion suddenly aroused by provocation must be of such nature as the law would deem adequate to temporarily dethrone reason and displace malice. *State v. Ward*, 286 N.C. 304, 210 S.E. 2d 407 (1974), *modified*, 428 U.S. 903, 49 L.Ed. 2d 1207, 96 S.Ct. 3206 (1976). Mere words however abusive are not sufficient provocation to reduce second-degree murder to manslaughter. Legal provocation must be under circumstances amounting to an assault or threatened assault. *State v. Watson*, 287 N.C. 147, 214 S.E. 2d 85 (1975).

The State's evidence was sufficient to make out a case of second-degree murder. The State's evidence does not permit a reasonable inference that the killings resulted from such provocation as would temporarily dethrone reason and displace malice. Defendant's evidence tended to show that he did not *intentionally* assault anyone with a deadly weapon and if anyone was fatally injured by the use of his weapon, it was accidental or at most the injury proximately resulted from his culpable negligence. Therefore, defendant's evidence, if believed, would support a verdict of not guilty by reason of accident or a verdict of involuntary manslaughter, both of which were properly submitted by the trial judge. His evidence was not consistent with a mitigation of second-degree murder to voluntary manslaughter on the ground that he acted under the influence of heat of passion upon sudden provocation.

Defendant contends that the element of malice was rebutted by his evidence even though it did not fall within the definition of self-defense or heat of passion. In support of his position, defendant relies upon *State v. Childress*, 228 N.C. 208, 45 S.E. 2d 42 (1947), and *State v. Staton*, 227 N.C. 409, 42 S.E. 2d 401 (1947).

In *Staton* defendant was hidden in a corncrib in an attempt to catch an intruder who had been going into his barn. On that night, a person approached the cow stall, and despite defendant's repeated calls of "who is there," the intruder proceeded to undo the rope securing the cow stall. Defendant thinking his own life was in danger fired and killed his own brother-in-law. The Court found error in the trial in that the lesser included offense of manslaughter was not submitted to the jury. In so holding, the Court failed to state whether the lesser included offense to be

submitted was the offense of voluntary manslaughter or involuntary manslaughter. Obviously, the Court concluded that defendant was acting in self-defense and that the jury should have considered the question of whether defendant used excessive force so as to require the submission of voluntary manslaughter as a possible verdict.

In *Childress* defendant, a taxi driver, came home from work and was met at the front door by his wife who had been eating supper with her mother. Defendant and his wife went to their bedroom, and in about four or five minutes, defendant's mother-in-law heard a gun fire and then heard her daughter call for her. Upon entering the bedroom, she observed the defendant and his wife standing erect; defendant was holding his wife's arm with one hand and was pointing a pistol toward her with his other hand. Defendant's wife was fatally wounded by the gunshot wound. Defendant testified that the pistol accidentally discharged when he attempted to throw it on the bed. In ordering a new trial, this Court held that the lesser included offense of manslaughter should have been submitted to the jury. Again, the Court failed to state whether voluntary manslaughter or involuntary manslaughter should have been submitted; however, the evidence would have supported a verdict of not guilty on the theory of accident or a verdict of involuntary manslaughter on the grounds of culpable negligence.

We are unable to find any cases in this jurisdiction in which the presumption of malice arising from the intentional assault of another with a deadly weapon may be rebutted except in cases involving self-defense or heat of passion. Neither *Staton* nor *Childress* controls the factual situation in the case before us for decision.

The defendant received a fair trial free of prejudicial error.

No error.