IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1106

Filed 16 April 2025

Guilford County, Nos. 19CRS025814-17, 19CRS 25818, 19CRS025819, 19CRS 25820-21, 19CRS025822, 19CRS086157, 19CRS 86158-62

STATE OF NORTH CAROLINA

v.

MERANDA CHANTEL WATLINGTON

Guilford County, Nos. 19CRS025851-54, 19CRS 25855-57, 19CRS025858-59, 19CRS025862, 19CRS 86150-55

STATE OF NORTH CAROLINA

v.

FANA ANQUETTE FELTON

Appeal by Defendants from judgments entered 10 and 11 October 2022 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 29 October 2024 in session at Duke University School of Law in the City of Durham pursuant to N.C. Gen. Stat. § 7A-19(a).

*Attorney General Jeff Jackson, by Special Deputy Attorney General Kathryne E. Hathcock, for the State-Appellee.*

*Hynson Law, PLLC, by Warren D. Hynson, for Defendant-Appellant Meranda Chantel Watlington.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Daniel Shatz, for Defendant-Appellant Fana Anquette Felton.*

COLLINS, Judge.

This case involves appeals by two defendants: Meranda Chantel Watlington and Fana Anquette Felton. Watlington appeals from judgments entered upon a jury's guilty verdicts of nine felonies, including one count of first-degree murder, and two misdemeanors. Felton appeals from judgments entered upon a jury's guilty verdicts on eleven counts of accessory after the fact, one for each of Watlington's convictions. Watlington and Felton each raise several issues on appeal. For the following reasons, we arrest judgment on three of Watlington's convictions for hit and run and three of Felton's convictions for accessory after the fact to hit and run, and we remand for resentencing. We find no error or dismiss defendants' arguments as to the remaining convictions, including Watlington's conviction for first-degree murder and Felton's conviction to accessory after the fact to first-degree murder.

## I.  Background

Watlington was indicted for one count of first-degree murder, five counts of attempted first-degree murder, four counts of assault with a deadly weapon with intent to kill inflicting serious injury, six counts of felonious hit and run resulting in serious bodily injury or death, one count of driving while license revoked, and one count of failure to reduce speed. Felton was indicted for sixteen counts of accessory

after the fact to all of the felony charges against Watlington. Watlington and Felton were tried jointly, and the evidence at trial, which included testimony from both lay and expert witnesses, medical records, and video footage, tended to show the following:

In the early morning hours of 12 October 2019, at approximately 3:25 a.m., Felton drove a 2006 Ford Explorer to the Exxon gas station located on West Gate City Boulevard in Greensboro, North Carolina. In addition to Felton, three other individuals were in the Explorer: Watlington was in the front passenger seat, and cousins Latika and Zanelle Tucker were in the rear seats.

Felton turned into the Exxon parking lot and drove the Explorer between two gas pumps toward the store. Shanna Goode was sitting inside her car that was parked at one of the gas pumps. As Felton passed the gas pumps, she hit the side of Goode's car with the front right side of the Explorer. Felton drove the Explorer a few feet past Goode's car and stopped in the middle of the parking lot. Felton and Watlington got out of the Explorer and approached Goode, who had stepped out of her car and was standing beside it. A conversation ensued between Watlington, Felton, and Goode. A few minutes later, Latika and Zanelle got out of the Explorer and joined the conversation. This conversation occurred to the side of Goode's car and directly behind the Explorer.

As the conversation about the accident continued, Felton became increasingly aggressive. Exxon's security footage shows Watlington repeatedly attempting to

remove Felton from the situation back to the Explorer, to no avail. Others at the Exxon began to take notice, and a few individuals approached to check on the situation. Eventually, approximately ten people can be seen on the security footage standing to the side of Goode's car and behind the Explorer.

After approximately twenty minutes, the confrontation became physical. Goode testified that a fight first broke out between Felton and Jennifer Lennon, one of the individuals who had approached to check on the situation. Soon after, multiple fights broke out in the Exxon parking lot. Goode testified that the fighting lasted for more than twenty-five minutes, with Felton being the primary aggressor.

Throughout the fight, Zanelle tried to control Felton and get her back into the Explorer. While doing so, however, Zanelle was hit in the head. She started to feel light-headed and laid down on the ground directly behind the Explorer. Meanwhile, the fighting and chaos continued. Some individuals became concerned about Zanelle and approached to check on her. Latika stood over Zanelle, and Donnetta Evans sat on the ground next to Zanelle and attempted to check Zanelle's pulse. Evans' husband, Billy Travis, also stood behind the Explorer, checking on Zanelle.

Nearly thirty minutes after the initial conversation between Watlington, Felton, and Goode began, with the fighting and chaos ongoing, Watlington walked back to the Explorer and got into the driver's seat. She sat in the Explorer for a few seconds and then backed the Explorer over the group of individuals directly behind her, which included Zanelle, Latika, Evans, Goode, and Travis. It took Watlington

approximately ten seconds to completely run over them. Goode testified that Watlington ran over her legs and "people's bodies."

Watlington brought the Explorer to a complete stop, with the people she had hit now on the ground a few feet in front of her. A few individuals began moving and attempting to stand up; some, including Goode, were able to roll out of Watlington's immediate path. Kalyn Burch, who was not initially hit by Watlington, dragged Travis out of the way and then kneeled next to Evans, who was lying injured on the ground.

However, eight seconds after Watlington backed over the individuals, she put the Explorer in drive, stepped hard on the gas pedal, and drove forward toward the same group. According to Goode, who had rolled herself far enough to the side to avoid getting hit a second time, Watlington drove the Explorer forward at full speed. Watlington drove straight into and over the group of people in front of her, which included Zanelle, Latika, Evans, and Burch. She also swiped the side of Goode's car and crashed into another vehicle—occupied by Melinda Sims—on the other side of the parking lot. The incident, caught on Exxon's security footage, left several individuals lying motionless on the ground.

Felton, as seen in the security footage, watched the entire incident occur. After Watlington ran over the victims the second time, Felton stood directly over the victims and yelled at them. Watlington backed the Explorer up again and stopped adjacent to the individuals she had just hit. As law enforcement and emergency

services vehicles began to arrive, Felton got into the front passenger seat of the Explorer, and Watlington drove out of the Exxon parking lot.

Law enforcement officer Douglas Maund saw chaos upon arriving at the scene; he saw people running everywhere, multiple damaged vehicles, and "five or six" individuals lying on the ground motionless.

Law enforcement officers located the Explorer parked in a driveway about a quarter of a mile away from the Exxon. Expert testimony at trial indicated that although the vehicle was damaged, its brakes, steering wheel, and accelerator pedal were functioning normally. Officer James Cozart, a member of the Greensboro Police Department's Crash Reconstruction Unit, analyzed data from the Explorer's data recorder. He testified that the accelerator pedal percentage, which measures how much the driver is depressing the gas pedal, was at 99.5 percent when Watlington put the Explorer into reverse and backed over the individuals. When Watlington put the Explorer in drive and began driving forward, Officer Cozart testified that the accelerator pedal percentage was ninety-five percent.

Not long after arriving at the scene and locating the abandoned Explorer, officers found Watlington and Felton walking along West Gate City Boulevard near the Exxon and apprehended them. The keys to the Explorer were found in the purse Felton was carrying when apprehended.

Zanelle was declared deceased at the scene. Several other individuals were injured as a result of being hit or run over by Watlington, including Travis, Evans,

Latika, Burch, and Sims.

- Travis sustained a concussion and blunt chest trauma, and suffered two miniature heart attacks in the days immediately following the crash.

- Evans woke up in the hospital approximately twenty days after the crash and spent a total of twenty-six days in the hospital. She sustained a fractured skull, a compound-fractured collarbone, a broken shoulder blade, broken ribs, a broken back, a broken pelvis, a broken leg and foot, and other more minor injuries. She also suffered memory loss and a permanent loss of smell.

- Latika suffered a traumatic brain injury which left her with memory loss. She also sustained blunt trauma to her left lung, a broken shoulder blade, a broken left leg, a broken pelvis, and a broken back, and she went into hemorrhagic shock from internal bleeding.

- Burch sustained a broken back and neck, a broken jaw, and several broken ribs. He also had a severe laceration to his scalp and remained in the hospital for eleven days.

- Sims sustained minor injuries, including a dislocated knee and back pain.

The jury convicted Watlington of one count of first-degree murder under the felony murder rule, four counts of assault with a deadly weapon inflicting serious injury, one count of assault with a deadly weapon, four counts felonious hit and run

resulting in serious bodily injury or death, and one count of misdemeanor hit and run. The jury convicted Felton of accessory after the fact to all eleven of Watlington's convictions. Watlington and Felton appeal.

## II. Discussion

### A. Defendant Watlington

Watlington makes several arguments on appeal. We address each in turn.

#### 1. *Assault With a Deadly Weapon Inflicting Serious Injury as the Predicate Felony for Felony Murder*

Watlington first argues that the trial court erred by sentencing her to life without parole for first-degree felony murder where the judgment for felony murder was impermissibly based on the felony of assault with a deadly weapon inflicting serious injury. Watlington's argument is meritless.

We first address Watlington's preservation of this issue for appeal. Generally, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). The party must also obtain a ruling on their request, objection, or motion. *Id.*

Furthermore, "[a] party may not make any portion of the jury charge . . . the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict[.]" N.C. R. App. P. 10(a)(2). However, an error based

on the ground that "[t]he sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law" is preserved by law without such objection. *See* N.C. Gen. Stat. § 15A-1446(d)(18) (2023).

Nevertheless,

> an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action . . . may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C. R. App. P. 10(a)(4).

Watlington presents this issue as a "sentencing error" that is preserved for appellate review absent objection; this mischaracterizes the issue. The essence of Watlington's argument is that the trial court erred by submitting to the jury felony murder based on the underlying felony of assault with a deadly weapon inflicting serious injury. This is a jury instruction issue. Watlington failed to object to the felony-murder jury instruction or raise this issue at any point in the trial court. Watlington has also failed to argue on appeal that this issue amounts to plain error. Accordingly, Watlington has failed to preserve this issue for appellate review.

The State, however, does not disagree with Watlington's characterization of this issue as a "sentencing error." The State does not argue that Watlington has failed to preserve this issue for our review and addresses the issue under a de novo

review. In our discretion, we will address the parties arguments as to whether assault with a deadly weapon inflicting serious injury, as a matter of law, can serve as the predicate felony for felony murder.

"Felony murder is murder in the first degree 'irrespective of premeditation or deliberation or malice aforethought.'" *State v. Wilson*, 313 N.C. 516, 537 (1985) (citation omitted). "The elements of felony murder are: (1) [] a defendant . . . committed or attempted to commit a predicate felony under N.C. Gen. Stat. § 14-17(a)[]; (2) [] a killing occurred in the perpetration or attempted perpetration of that felony; and (3) [] the killing was caused by the defendant[.]" *State v. Maldonado*, 241 N.C. App. 370, 376 (2015) (quotation marks and citation omitted). "[T]he perpetration or attempted perpetration of any . . . felony committed or attempted with the use of a deadly weapon" is a predicate felony for purposes of felony murder. N.C. Gen. Stat. § 14-17(a) (2023).

Assault with a deadly weapon inflicting serious injury is a felony with the following elements: "(1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Foreman*, 270 N.C. App. 784, 789 (2020) (citation omitted); *see* N.C. Gen. Stat. § 14-32(b) (2023). "[A]n automobile can be a deadly weapon if it is driven in a reckless or dangerous manner." *State v. Jones*, 353 N.C. 159, 164 (2000) (citation omitted). Assault with a deadly weapon inflicting serious injury is not a specific intent crime. *State v. Woods*, 126 N.C. App. 581, 587 (1997). Instead, it is a general intent crime which only requires the doing of some

- 10 -

act. *Id.*; *see also State v. Jones*, 339 N.C. 114, 148 (1994). An individual may be found guilty of assault with a deadly weapon inflicting serious injury if she acts with either "actual intent" or "culpable or criminal negligence from which such intent may be implied." *Id.* at 164-65 (citation omitted). For assault with a deadly weapon inflicting serious injury to serve as the predicate felony for a felony murder conviction, however, the individual must have acted with a "level of intent greater than culpable negligence." *Id.* at 167. That is, the person must have acted with the "actual intent to commit the act that forms the basis of [the] first-degree murder charge." *Id.* at 166 (quotation marks omitted).

Watlington argues that our Supreme Court's holding in *State v. Jones*, 353 N.C. 159, establishes a bright-line rule that assault with a deadly weapon inflicting serious injury can never serve as the predicate felony for a felony murder charge. Watlington's argument is not correct.

In *Jones*, the "appreciably impaired" defendant crashed his vehicle into another vehicle occupied by six college students. 353 N.C. at 161-62. Two of the students were killed in the collision. *Id.* at 161. The evidence presented at trial indicated that the defendant "perpetrated the assault by operating his automobile, a deadly weapon, in a culpably or criminally negligent manner. His criminal or culpable negligence was established, as a matter of law, when he was convicted of DWI by the jury[.]" *Id.* at 165. Reversing the defendant's felony murder conviction, the Court held that "culpable negligence may not be used to satisfy the intent

- 11 -

requirements for a first-degree murder charge." *Id.* at 163. The Court emphasized that all categories of first-degree murder[1] require mental states "greater than culpable or criminal negligence; that is, they all require that the defendant had 'actual intent' to commit the act that forms the basis of a first-degree murder charge." *Id.* at 166. Contrary to Watlington's assertion, however, the Court did not hold that assault with a deadly weapon inflicting serious injury can never serve as the predicate felony for a felony murder charge.

Here, the trial court's instructions reflect a correct statement of the law—that felony murder based on the underlying felony of assault with a deadly weapon inflicting serious injury must be committed with the "actual intent to commit the act that forms the basis of [the] first-degree murder charge." *Jones*, 353 N.C. at 166 (quotation marks omitted). The trial court instructed the jury that to find Watlington guilty of first-degree murder under the felony murder rule, the State must prove beyond a reasonable doubt that, among other things, Watlington committed assault with a deadly weapon inflicting serious injury "by intentionally striking Billy Travis, Latika Tucker, or Donnetta Evans with a 2006 Ford Explorer."

Furthermore, the evidence presented at trial was sufficient to support a conclusion that Watlington acted with the intent to strike Latika, Burch, Evans, and

---

[1] "[M]urders classified as murder in the first degree by the 1893 enactment were divided into three basic categories: (1) murders perpetrated by means of poison, lying in wait, imprisonment, starving, or torture, (2) premeditated murder, and (3) killings occurring in the commission of certain specified felonies 'or other felony.'" *State v. Davis*, 305 N.C. 400, 423 (1982).

Travis. Watlington can be seen on the Exxon security footage conversing with others and participating in the fight for nearly thirty minutes. She then walked to the Explorer and got into the driver's seat. After a brief pause, she backed the vehicle directly over the victims, completely running them over. Watlington then brought the vehicle to a complete stop, shifted the car's gears, and drove forward, hitting and running over the victims a second time. This evidence supports a conclusion that Watlington "had 'actual intent' to commit the act that forms the basis of a first-degree murder charge." *Id.* at 166.

Watlington argues that the jury's acquittal of first-degree murder based upon premeditation and deliberation shows that she did not act intentionally, but rather that she acted with mere negligence. This argument reflects a misunderstanding of the law. As the *Jones* Court clarified, "the actual intent to kill may be present or absent; however, the actual intent to commit the underlying felony is required." *Id.* at 167. Thus, even if the jury did not find that Watlington intended to kill Zanelle, the evidence was sufficient for the jury to find that she was "purposely resolved" to strike Latika, Burch, Evans, and Travis—"the conduct that comprises" the underlying predicate felony. *Id.*

Accordingly, assault with a deadly weapon inflicting serious injury, as a matter of law, can serve as the predicate felony for a felony murder conviction when the defendant acts with the "actual intent to commit the act that forms the basis of [the] first-degree murder charge." *Id.* at 166 (quotation marks omitted). Because the trial

court only instructed the jury on assault with a deadly weapon inflicting serious injury committed with actual intent to strike Latika, Burch, Evans, and Travis, and the evidence was sufficient to support the instruction, the trial court did not err by submitting to the jury first-degree felony murder based on the underlying felony of assault with a deadly weapon inflicting serious injury.

### 2. *Felony Murder Jury Instruction*

Watlington next contends that the trial court plainly erred by failing to instruct the jury that it could not convict Watlington of felony murder if it found that Watlington acted with culpable or criminal negligence as opposed to actual intent. This argument is without merit.

The plain error standard of review is well established:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518 (2012) (quotation marks and citations omitted).

When instructing the jury, the trial court's "purpose is to give a clear instruction which applies the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct verdict." *State v. Smith*, 360 N.C.

341, 346 (2006) (quotation marks and citation omitted). When reviewing jury instructions, we consider whether the instruction complained of contains a correct statement of the law and, if so, whether "there [is] evidence upon which to base the instruction given, or to justify the charge to the jury[.]" *State v. Alston*, 228 N.C. 555, 557 (1948). "Furthermore, to constitute plain error, the challenged instruction must result in a miscarriage of justice or the probability of a different verdict than the jury would otherwise have reached." *State v. Fowler*, 353 N.C. 599, 624 (2001) (citation omitted).

Here, the trial court instructed the jury on both first and second-degree murder. For the first-degree murder charge, the trial court instructed the jury as to murder on the basis of malice, premeditation, and deliberation and murder under the felony murder rule. As to felony murder, the trial court instructed the jury only on felony murder based on the underlying felony of assault with a deadly weapon inflicting serious injury committed with actual intent to inflict injury:

> Whether or not you find Defendant Watlington guilty of first degree murder on the basis of malice, premeditation, and deliberation, you will also consider whether Defendant Watlington is guilty of first degree murder under the First Degree Felony Murder Rule. Therefore, if you find from the evidence beyond a reasonable doubt that on or about the alleged date, Defendant Watlington *intentionally struck* Billy Travis, Latika Tucker, or Donnetta Evans with a 2006 Ford Explorer thereby inflicting serious injury upon Billy Travis, Latika Tucker, or Donnetta Evans and that while committing assault with a deadly weapon inflicting serious injury, Defendant Watlington killed Zanelle Tucker and that Defendant Watlington's act was a proximate

- 15 -

> cause of Zanelle Tucker's death and that Defendant Watlington committed assault with a deadly weapon inflicting serious injury with the use of a deadly weapon, it would be your duty to return a verdict of guilty of first degree murder under the Felony Murder Rule. *If you do not so find or have a reasonable doubt as to one or more of these things, you will not return a verdict of guilty of first degree murder under the Felony Murder Rule.*

(emphasis added).

In its instruction, the trial court clearly articulated that if the jury did not find beyond a reasonable doubt that Watlington acted intentionally in striking the victims with her vehicle, it was to return a verdict of not guilty of felony murder. Therefore, had the jury found that Watlington acted with mere culpable or criminal negligence as opposed to actual intent, it would have, under the trial court's instructions, returned a verdict of not guilty. Accordingly, the trial court did not err, much less plainly err, in its instructions on the requisite elements for first-degree murder under the felony murder rule.

### 3. *Voluntary Manslaughter Jury Instruction*

Watlington next argues that the trial court erred by failing to instruct the jury on voluntary manslaughter. Specifically, Watlington contends that a voluntary manslaughter instruction was warranted because the evidence at trial supported a finding that she acted in the heat of passion suddenly aroused by adequate provocation in killing Zanelle. This argument lacks merit.

"First-degree murder is the unlawful killing—with malice, premeditation and

deliberation—of another human being." *State v. Arrington*, 336 N.C. 592, 594 (1994) (citations omitted). "Voluntary manslaughter is the killing of another human being without malice and without premeditation and deliberation under [1] the influence of some passion or [2] heat of blood produced by adequate provocation." *State v. Simonovich*, 202 N.C. App. 49, 53 (2010) (citation omitted).

> [T]he heat of passion suddenly aroused by provocation must be of such nature as the law would deem adequate to temporarily dethrone reason and displace malice. Mere words however abusive are not sufficient provocation to reduce second-degree murder to manslaughter. Legal provocation must be under circumstances amounting to an assault or threatened assault.

*State v. Montague*, 298 N.C. 752, 757 (1979) (citations omitted). "Voluntary manslaughter is a lesser included offense of first-degree murder." *Simonovich*, 202 N.C. App. at 53 (citation omitted). "A jury must be instructed on a lesser included offense only when evidence has been introduced from which the jury could properly find that the defendant had committed the lesser included offense." *State v. Woodard*, 324 N.C. 227, 232 (1989) (citation omitted).

Here, there is insufficient evidence that Watlington killed Zanelle in "the heat of blood produced by adequate provocation." *Simonovich*, 202 N.C. App. at 53 (citation omitted). The brawl that broke out at the Exxon was lengthy and physical; however, Watlington walked away from the fight and to the driver's side of the Explorer on her own accord. As she walked away from the fight and got into the driver's seat, Watlington was not under "circumstances amounting to an assault or

threatened assault." *Montague*, 298 N.C. at 757 (citation omitted).  Nor was she under such circumstances when she sat in the Explorer for a few seconds before backing the Explorer straight over Zanelle, who was on the ground directly behind her.  Nor was she under such circumstances when she sat in the Explorer for eight seconds after backing over Zanelle and before driving forward, running over Zanelle again.  The evidence "does not permit a reasonable inference that [Zanelle's] killing[] resulted from such provocation as would temporarily dethrone reason and displace malice." *Id.*  We therefore find no error in the trial court's decision not to instruct the jury on voluntary manslaughter.

Moreover, even if it had been error not to instruct the jury on voluntary manslaughter, such error would have been harmless because the jury convicted Watlington of felony murder.  *See, e.g., State v. Wagner*, 343 N.C. 250 (1996).

### 4. *Watlington's Multiple Hit and Run Counts*

Next, Watlington argues that the trial court erred by permitting her to be convicted of multiple counts of hit and run.  Specifically, Watlington contends that N.C. Gen. Stat. § 20-166 is ambiguous because it does not clarify whether its unit of prosecution is the conduct of crashing and leaving the scene of the crash or the number of victims injured as a result of the crash.  Therefore, Watlington contends, the rule of lenity should apply.

Whether N.C. Gen. Stat. § 20-166 defines its unit of prosecution by the act of crashing and leaving the scene of the crash or instead by the number of persons

injured as a result of the crash is an issue of statutory construction. Issues of statutory construction are conclusions of law to be reviewed de novo by this Court. *State v. Patterson*, 266 N.C. App. 567, 570 (2019).

The legislature has the discretion to define the allowable unit of prosecution, subject to constitutional limitations. *State v. Smith*, 323 N.C. 439, 441 (1988). When, however, the legislature does not define the precise unit of prosecution with clarity, the court must determine the allowable unit and must resolve any ambiguity in favor of lenity. *Id.* at 442-43; *State v. White*, 127 N.C. App. 565, 570 (1997). In other words, "the presumption is against multiple punishments in the absence of a contrary legislative intent." *State v. Garris*, 191 N.C. App. 276, 284 (2008) (quotation marks and citation omitted).

N.C. Gen. Stat. § 20-166 provides, in pertinent part,

> (a) The driver of any vehicle who knows or reasonably should know:
>
>> (1) That the vehicle which he or she is operating is involved in a crash; and
>>
>> (2) That the crash has resulted in serious bodily injury, as defined in [N.C. Gen. Stat. §] 14-32.4, or death to *any person*;
>
> shall immediately stop his or her vehicle at the scene of the crash. . . .
>
> (a1) The driver of any vehicle who knows or reasonably should know:
>
>> (1) That the vehicle which he or she is operating is involved in a crash; and

- 19 -

        (2) That the crash has resulted in *injury*;

> shall immediately stop his or her vehicle at the scene of the
> crash. . . .

N.C. Gen. Stat. § 20-166 (2023) (emphasis added).

Subsection (a)(2) refers to a crash that results in serious bodily injury or death to "any person" while subsection (a1)(2) refers to a crash that results in "injury." *Id.* Neither provision is a "clear expression of legislative intent to punish separately and cumulatively for each and every" person injured in the crash. *Smith*, 323 N.C. at 442 (emphasis and citations omitted). As the legislature has not established the allowable unit of prosecution under this statute, we must resolve this ambiguity in favor of lenity and hold that the unit of prosecution under N.C. Gen. Stat. § 20-166 is the number of crashes from which the defendant fled and not the number of victims injured as a result of the crashes.

Our Supreme Court has come to similar conclusions when construing statutes with similar language. In *Smith*, our Supreme Court concluded that a statute making it unlawful to "disseminate" "any obscene writing, picture, record or other representation or embodiment of the obscene" was ambiguous. 323 N.C. at 441 (quoting N.C. Gen. Stat. § 14-190.1 (1986 & Cum. Supp. 1987)). Similarly, in *State v. Conley*, our Supreme Court held that the criminal statute prohibiting the possession or carrying of "any gun, rifle, pistol, or other firearm" on educational property was ambiguous. 374 N.C. 209, 214 (2020) (emphasis omitted) (quoting N.C.

Gen. Stat. § 14-269.2(b) (2019)). The Court determined in each case that the relevant statutory provision failed to provide a "clear expression of legislative intent to punish separately and cumulatively for each and every" prohibited item found in the defendants' possession. *Smith*, 323 N.C. at 442-44 (emphasis omitted); *see also Conley*, 374 N.C. at 214. Resolving such ambiguity in the defendants' favor, the Court determined that the proper unit of prosecution under each statute was the defendant's conduct of possessing the prohibited items, not the number of items found in the defendant's possession. *Id.*; *see also Garris*, 191 N.C. App. at 285 (holding that simultaneous possession of two firearms supports only a single conviction for possession of a firearm by a convicted felon rather than multiple convictions).

Here, Watlington was convicted of four counts of felonious hit and run resulting in serious bodily injury or death and one count of misdemeanor hit and run—a total of five violations of N.C. Gen. Stat. § 20-166 corresponding with each individual injured as a result of the crashes. The five convictions, however, resulted from two crashes: first, when Watlington backed over the victims with the Explorer and second, when Watlington drove forward and hit and ran over the victims with the Explorer a second time. She subsequently left the Exxon. Therefore, Watlington can only be convicted of two violations of N.C. Gen. Stat. § 20-166, one conviction for Watlington's conduct of leaving the scene of each crash. We arrest judgment on three of Watlington's hit-and-run convictions and remand this matter to the trial court for resentencing.

### 5. *Serious Bodily Injury to Billy Travis*

Finally, Watlington argues that the trial court erred by denying her motion to dismiss the charge of felonious hit and run resulting in serious bodily injury to Travis. In accordance with our conclusion that Watlington may only be convicted of two counts of hit and run resulting from the two crashes in the instant case, this issue is dismissed as moot.

## B. Defendant Felton

Felton also makes several arguments on appeal. We address each in turn.

### 1. *Motion to Dismiss for Insufficient Evidence*

Felton first argues that the trial court erred by denying her motion to dismiss because there was insufficient evidence to support her convictions.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62 (2007) (citation omitted). "Upon [a] defendant's motion for dismissal, the question for the [trial c]ourt is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378 (2000) (citation omitted). If there is substantial evidence of each, the motion to dismiss is properly denied. *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79 (1980) (citations omitted). "In making its determination, the trial court must consider all evidence admitted, whether

competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192-93 (1994) (citation omitted).

### a. *Evidence of Accessory After the Fact*

Felton first argues that the evidence was insufficient to support her convictions for accessory after the fact because no evidence was presented showing that she took any action making her an accessory after the fact.

The elements necessary to prove accessory after the fact under N.G. Gen. Stat. § 14-7 are: "(1) a felony was committed; (2) the accused knew that the person he received, relieved, or assisted was the person who committed the felony; and (3) the accused rendered assistance to the felony personally." *State v. Earnhardt*, 307 N.C. 62, 68 (1982) (citations omitted); *see* N.C. Gen. Stat. § 14-7 (2023). Circumstantial evidence is permitted, and once the trial court "decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination," show the defendant's guilt beyond a reasonable doubt. *Fritsch*, 351 N.C. at 379 (cleaned up).

Here, the trial court announced what the evidence showed:

> And as the police arrive, Defendant Felton willingly, voluntarily, and knowingly as to what Defendant Watlington had done, gets into the car with Defendant Watlington and allows and in fact condones Defendant Watlington to drive away and flee the scene.
>
> . . . .

It's also uncontroverted that the two defendants, Defendant Watlington and Defendant Felton, were seen a short time later not too far from the crime scene in the same general location. . . . At that time Defendant Felton, with the gold purse on her shoulder, was in exclusive possession of the ignition key to the Ford Explorer.

. . . .

She fled from the car with Defendant Watlington, and it's important that she did this all the while knowing that the police, who had already arrived at the Exxon, were actively looking for the perpetrator of the crime. By taking possession of the key and control of the car and fleeing the car, when she had the ability and capacity to operate the car, . . . she elected to flee from the car with Defendant Watlington after taking exclusive possession of the key or at some point taking exclusive possession of the key. She still fled from the car. By doing so, she aided Defendant Watlington in attempting to escape detection, arrest, or punishment.

Similarly, she took the car keys, the – the part of the Ford Explorer's equipment, the car key, the thing that operated what was used to commit all of the crimes. By taking the car key after abandoning the car, she also concealed who the driver of the car was or at least by taking the car key away from [Watlington], aided the Defendant Watlington in escaping arrest, detection, or punishment.

This evidence, viewed in the light most favorable to the State, was sufficient to show that Felton, after witnessing Watlington hit and run over the victims with the Explorer and leave the scene of the crashes, took the Explorer's car keys, abandoned the Explorer, and concealed Watlington's identity as the Explorer's driver. Accordingly, there was sufficient evidence to support a reasonable inference of Felton's guilt of accessory after the fact to Watlington's felonies, and the trial court

did not err by denying Felton's motion to dismiss.

### b. Allegations in the Indictments

Felton next argues that there was a fatal variance between the indictments charging her with accessory after the fact and the evidence presented at trial. Specifically, Felton contends that her possession of the car keys should have been unavailable to the State as a theory of prosecution because it was not alleged in her indictments for accessory after the fact. This argument lacks merit.

A motion to dismiss on account of a fatal variance should be granted "when the prosecution fails to offer sufficient evidence [that] the defendant committed the offense charged. A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged." *State v. Tarlton*, 279 N.C. App. 249, 253 (2021) (citation omitted). "In order to prevail on such a motion, the defendant must show a fatal variance between the offense charged and the proof as to the gist of the offense." *Id.* A variance "does not require reversal unless the defendant is prejudiced as a result." *State v. Glidewell*, 255 N.C. App. 110, 113 (2017) (quotation marks and citation omitted).

A bill of indictment "couched in the language of the statute is generally sufficient to charge the statutory offense." *State v. Palmer*, 293 N.C. 633, 638 (1977). An indictment will generally be deemed sufficiently complete even "without evidentiary matters descriptive of the manner and means by which the offense was committed." *State v. Muskelly*, 6 N.C. App. 174, 176-77 (1969). Furthermore, the

fatal variance rule "was not intended as a get-out-of-jail-free card for setting aside convictions based on hyper-technical arguments." *State v. Henry*, 237 N.C. App. 311, 323 (2014) (citation omitted).

Here, each of Felton's accessory-after-the-fact indictments alleges that Felton "did knowingly assist [Watlington] in attempting to escape and in escaping detection, arrest, and punishment by providing a means of escape, to wit: an automobile, to flee the crime scene, and by concealing evidence, to wit: an automobile." When viewed "in the light most favorable to the State, giving the State the benefit of every reasonable inference," Felton's taking of the car keys evidences her attempt to assist Watlington escape arrest and conceal the Explorer. *Rose*, 339 N.C. at 192 (citation omitted). Accordingly, the bills of indictment charging Felton with accessory after the fact are not fatally varied from the evidence presented at trial.

### c. *Multiple Counts of Accessory After the Fact*

Felton next argues that the trial court erred by denying her motion to dismiss because there was insufficient evidence that Felton committed more than one count of accessory after the fact. Specifically, Felton contends that N.C. Gen. Stat. § 14-7 is ambiguous as to the applicable unit of prosecution for the crime of accessory after the fact and, as such, the rule of lenity should apply.

As discussed above, the rule of lenity provides that any ambiguity in a criminal statute concerning the unit of prosecution "should be resolved in favor of lenity" toward the defendant. *Smith*, 323 N.C. at 442-43. It is well-established that when

interpreting a statute, "a court must consider the statute as a whole and determine its meaning by reading it in its proper context and giving its words their ordinary meaning." *City of Asheville v. Frost*, 370 N.C. 590, 592 (2018) (citation omitted).

N.C. Gen. Stat. § 14-7 governs the crime of accessory after the fact and provides:

> If any person shall become an accessory after the fact to any felony, whether the same be a felony at common law or by virtue of any statute made, or to be made, such person shall be guilty of a crime, and may be indicted and convicted together with the principal felon, or after the conviction of the principal felon, or may be indicted and convicted for such crime whether the principal felon shall or shall not have been previously convicted, or shall or shall not be amenable to justice. Unless a different classification is expressly stated, that person shall be punished for an offense that is two classes lower than the felony the principal felon committed[.]

N.C. Gen. Stat. § 14-7.

Unlike in our above analysis of N.C. Gen. Stat. § 20-166, the context of N.C. Gen. Stat. § 14-7 clearly indicates that the legislature intended the allowable unit of prosecution to be each felony for which the principal committed and the accessory assisted after the fact. Additionally, the accessory-after-the-fact statute sets forth different punishments for an accessory after the fact based on the severity of the underlying felony committed by the principal, further demonstrating the legislature's intent. *See id.*

We therefore conclude that the statute is unambiguous, and the legislature

intended for an accessory after the fact to be punished for each felony the principal committed.[2] Accordingly, the rule of lenity is inapplicable, and the trial court did not err by denying Felton's motion to dismiss for this reason.

### d. *Accessory After the Fact to Hit and Run*

Next, Felton contends that the trial court erred by denying her motion to dismiss the charges of accessory after the fact to Watlington's convictions for "leaving the scene." Felton argues, "Even if the evidence were sufficient to show that [] Felton assisted [] Watlington after the assaults and homicide at the gas station by helping [] Watlington get the car from the gas station to where it was parked, that would make [] Felton a co-principal to [] Watlington's crime of leaving the scene, not an accessory after the fact to that crime." Felton mischaracterizes the crime for which Watlington was convicted and the behavior for which Felton was herself convicted.

"An accessory after the fact is one who, knowing that a felony has been committed by another, receives, relieves, comforts or assists such felon, or who in any manner aids him to escape arrest or punishment." *State v. Oliver*, 302 N.C. 28, 55 (1981) (citations omitted). The essential elements of felony hit and run are:

> (1) that the defendant was involved in an accident; (2) that someone was physically injured in this accident; (3) that at the time of the accident the defendant was driving the vehicle; (4) that the defendant knew that he had struck a

---

[2] We note that Felton was convicted of accessory after the fact to Watlington's convictions of misdemeanor hit and run and misdemeanor assault with a deadly weapon. N.C. Gen. Stat. § 14-7 provides that an individual may be convicted as an accessory after the fact to any *felonies* committed by the principal. Felton has not raised this issue on appeal, and we do not address it.

pedestrian and that the pedestrian suffered physical injury; (5) that the defendant did not stop his vehicle immediately at the scene of the accident; and (6) that the defendant's failure to stop was willful, that is, intentional and without justification or excuse.

*State v. Acklin,* 71 N.C. App. 261, 264 (1984) (citing N.C. Gen. Stat. § 20-166).

Contrary to Felton's assertion, Watlington was not convicted of merely "leaving the scene." Leaving the scene of the crashes was only one element of her hit-and-run convictions. Here, the evidence, viewed in the light most favorable to the State, was sufficient to show the following: After witnessing Watlington hit and run over the victims with the Explorer and leave the scene of the crashes, Felton aided Watlington to escape arrest or punishment by taking the Explorer's car keys, abandoning the Explorer, and concealing Watlington's identity as the Explorer's driver. Felton's driving away with Watlington was not the behavior for which she was convicted. Accordingly, there was sufficient evidence to support a reasonable inference of Felton's guilt of accessory after the fact to Watlington's felonious hit-and-run convictions, and the trial court did not err by denying Felton's motion to dismiss on this basis.

### e. *Felton's Multiple Counts of Accessory After the Fact to Hit And Run*

Felton also argues that because the evidence supports Watlington being convicted of only one count of hit and run, the trial court erred by denying Felton's motion to dismiss the charge of multiple counts of accessory after the fact to hit and run.

As explained above, Felton may only be convicted of accessory after the fact to Watlington's felony hit and run convictions. As Watlington can only be convicted of two counts of hit and run, Felton may only be convicted of two counts of accessory after the fact to felonious hit and run. We therefore arrest judgment on three of Felton's convictions for accessory after the fact to Watlington's hit-and-run convictions and remand for resentencing.

### 2. *Jury Instruction for Accessory After the Fact*

Felton next argues that the trial court plainly erred by instructing the jury on a theory of guilt not alleged in her indictments.

Under the plain error standard of review, a defendant must show that the trial court committed a fundamental error that resulted in prejudice to the defendant. *Lawrence*, 365 N.C. at 518. "[B]ecause plain error is to be applied cautiously and only in the exceptional case, . . . the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]" *Id.* (quotation marks and citations omitted).

An indictment must allege "all the essential elements of the offense endeavored to be charged." *State v. Hunt*, 357 N.C. 257, 267 (2003) (quotation marks and citation omitted). Furthermore, "an indictment couched in the language of the statute is generally sufficient to charge the statutory offense." *Palmer*, 293 N.C. at 638. When instructing the jury, the trial court does not need "to state, summarize, or recapitulate the evidence, or to explain the application of the law to the evidence." *State v.*

*Wallace*, 104 N.C. App. 498, 504 (1991) (citations omitted).

The elements of accessory after the fact under N.G. Gen. Stat. § 14-7 are: "(1) a felony was committed; (2) the accused knew that the person he received, relieved, or assisted was the person who committed the felony; and (3) the accused rendered assistance to the felony personally." *Earnhardt*, 307 N.C. at 68 (citations omitted).

Here, each of Felton's accessory-after-the-fact indictments alleges that Felton "did knowingly assist [Watlington] in attempting to escape and in escaping detection, arrest, and punishment by providing a means of escape, to wit: an automobile, to flee the crime scene, and by concealing evidence, to wit: an automobile." Consistent with these indictments, the trial court instructed the jury to consider whether Felton "knowingly and willfully assisted Defendant Meranda Watlington in attempting to escape detection, arrest, and punishment." Felton's possession of the Explorer's car keys when apprehended was circumstantial evidence that she knowingly assisted Watlington in concealing the deadly weapon and of Watlington's identity as the operator of the deadly weapon. Contrary to Felton's contention, this is not a stand-alone theory presented by the State. Therefore, the trial court did not err, much less plainly err, by allowing the jury to use Felton's possession of the car keys to convict Felton of accessory after the fact.

### 3. *State's Closing Argument*

Finally, Felton contends that the trial court erred by failing to intervene ex mero motu when the State made the following argument during its closing statement:

that Felton "was walking away from the gas station with Meranda Watlington. Were they side by side at the time that the officers got to them? No. But they were walking away together. That is trying to let Meranda Watlington escape detection, arrest, or punishment." We find no merit in this argument.

Because Felton failed to object to the State's closing argument at trial, "the standard of review is whether the remarks were so grossly improper that the trial court abused its discretion by failing to intervene *ex mero motu*." *State v. Anthony*, 354 N.C. 372, 423 (2001) (quotation marks and citation omitted). "To establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *Id.* Therefore, when defense counsel fails to object to the State's improper argument and the trial court does not intervene, "the standard of review requires a two-step analytical inquiry: (1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial." *State v. Huey*, 370 N.C. 174, 179 (2017) (citations omitted).

During a criminal jury trial, "prosecutors are given wide latitude in the scope of their argument and may argue to the jury the law, the facts in evidence, and all reasonable inferences drawn therefrom." *State v. Phillips*, 365 N.C. 103, 135 (2011) (quotation marks and citations omitted). A prosecutor's closing argument "may properly be based upon the evidence and the inferences drawn from that evidence." *State v. Diehl*, 353 N.C. 433, 436 (2001) (citation omitted). Furthermore, "[o]nly an

extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken." *Anthony*, 354 N.C. at 427 (citation omitted).

Here, the State's closing argument was neither improper nor misleading. The challenged portion of the State's closing argument stems from the testimony of the law enforcement officer who apprehended Felton and Watlington after the assaults. This officer testified that when he initially encountered Felton and Watlington, Watlington was walking "a little bit further up" from Felton. This initial encounter was captured by the officer's body-worn camera and was shown to the jury. Based upon this evidence, it is not unreasonable for the State to state its inference that Felton and Watlington were together when they were apprehended by law enforcement. Accordingly, as there was no error in the State's closing remarks, the trial court did not abuse its discretion in failing to intervene ex mero motu.

## III.   Conclusion

For the foregoing reasons, as to Watlington's arguments on appeal, we conclude and order as follows:

- There was no error in submitting to the jury felony murder based on the underlying felony of assault with a deadly weapon inflicting serious injury.

- There was no error in the instructions on the elements of felony murder.

- There was no error in failing to instruct the jury on voluntary manslaughter.

- There was error in convicting Watlington for more than two counts of hit and run under N.C. Gen. Stat. § 20-166. The three judgments on Watlington's hit-and-run convictions are arrested and the matter is remanded for resentencing.

- Watlington's argument that the trial court erred by denying her motion to dismiss the charge of felonious hit and run resulting in serious bodily injury to Travis is dismissed as moot.

For Felton's arguments on appeal, we conclude and order as follows:

- There was no error in denying Felton's motion to dismiss her charges of accessory after the fact for insufficient evidence.

- There was no error in denying Felton's motion to dismiss her charges of accessory after the fact for a fatal variance.

- There was no error in denying Felton's motion to dismiss her charges of accessory after the fact on account of ambiguity in N.C. Gen. Stat. § 14-7.

- There was no error in denying Felton's motion to dismiss her charges of accessory after the fact to hit and run for insufficient evidence.

- It was error to convict Felton of more than two counts of accessory after the fact to felonious hit and run. The three judgments on Felton's convictions of accessory after the fact to hit and run are arrested and the

matter remanded for resentencing.

- There was no error in the jury instruction for accessory after the fact.

- The trial court did not abuse its discretion by not intervening ex mero motu in the State's closing argument.

In sum, we arrest judgment on three of Watlington's convictions for hit and run and remand for resentencing. We arrest judgment on three of Felton's convictions for accessory after the fact to Watlington's hit and run convictions and remand for resentencing. The remaining convictions remain undisturbed.

NO ERROR IN PART; DISMISSED IN PART; JUDGMENT ARRESTED IN PART AND REMANDED FOR RESENTENCING.

Judges HAMPSON and WOOD concur.